UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YOLANDA WRIGHT, Individually and on behalf of her minor son, MEKHI BURKETT, and ROSE RITA BAILEY, Individually and on behalf of her minor son, JAWUANE JOHNSON, Plaintiffs, | : : : : : : |
| v. | : No. 5:20-cv-02664 |
| AARON REED, MICHAEL SLIVKA, KENNETH STEPHENS, TIMOTHY DUGAN, BRIAN CUTH, JEFFREY APGAR, and MATTHEW RESZEK, Defendants. | : : : : : : |

**O P I N I O N**

**Plaintiffs' Motion for Reconsideration of the Court's Opinion and Order on Defendants' Motions to Dismiss, ECF No. 27—DENIED**

**Joseph F. Leeson, Jr.**  **March 10, 2021**
**United States District Judge**

**I.   BACKGROUND**

In this civil rights action, several Whitehall Township police officers are alleged to have assaulted and violated the constitutional rights of two African American teenagers while they were attending a high school basketball game.  In an Opinion and Order issued on January 12, 2021,[1] the Court addressed Defendants' three motions to dismiss claims in Plaintiffs' Amended Complaint.  The Court dismissed many of Plaintiffs' claims, however granted Plaintiffs leave to

---

[1]   *See* ECF Nos. 25-26; *Wright v. Whitehall Twp.*, No. 5:20-CV-02664, 2021 WL 100091 (E.D. Pa. Jan. 12, 2021).

file a Second Amended Complaint for purposes of re-pleading their civil rights conspiracy claims, in addition to the several claims that Defendants did not seek to dismiss.

Plaintiffs have now filed a motion for reconsideration of the Court's determination that the Amended Complaint failed to state viable claims for violation of rights guaranteed under 42 U.S.C. § 1981.  Defendants oppose Plaintiffs' motion for reconsideration.  After consideration of the parties' arguments, and for the reasons set forth below, the Court declines to alter or amend its previous determination with respect to the viability of Plaintiffs' § 1981 claims.  Plaintiffs' motion for reconsideration is therefore denied.

## II.     THE CONTENTIONS OF THE PARTIES

Plaintiffs argue that in its January 12, 2021 Opinion and Order, the Court made a "clear error of law" regarding the viability of Plaintiffs' claims under 42 U.S.C. § 1981.  Specifically, they claim that in finding that the Amended Complaint failed to state facts that could plausibly support viable claims for violation of § 1981, the Court did not consider § 1981's "equal benefit" and "like punishment" clauses.  Plaintiffs' Memorandum in Support of their Motion for Reconsideration ("Pls.' Mem."), ECF No. 27, at 5.  Under these clauses, which protect individuals from race-based discrimination without connection to contract formation, Plaintiffs contend that the Amended Complaint adequately states claims for relief.  This is so, according to Plaintiffs, because the Amended Complaint alleges that (1) the teenagers who were arrested are black, while all Defendant police officers are white, and (2) despite there being several non-African Americans among the group of teenagers who were present during the circumstances that led to the relevant arrests, only African American teenagers were arrested and charged with

crimes.² *See id*. at 7-11.  Plaintiffs further contend that even if the allegations in the Amended Complaint are insufficient to state viable claims for relief under § 1981's equal benefit and like punishment clauses, there is enough in the Amended Complaint to warrant a grant of leave allowing Plaintiffs the opportunity to re-plead their § 1981 claims.  *See id.* at 13-15.

Defendants oppose Plaintiffs' motion to alter or amend the Court's previous ruling.  Defendants' opposition relies primarily on what they see as Plaintiffs' inability to satisfy the relevant standard (which is discussed in the succeeding section).  *See generally* Defendants' Memorandum in Opposition ("Defs.' Opp'n."), ECF No. 28-2.  They claim that Plaintiffs are in effect asking the Court to reconsider its prior analysis without an intervening change in law, the existence of new evidence, clear legal error, or manifest injustice—one of which is required to grant relief from a judgment.  *See id.*  Defendants similarly contend that implicit in the Court's previous Opinion is a determination that Plaintiffs failed to allege the type of explicit racial animus that is necessary to state a claim for relief under the equal benefit and like punishment clauses of § 1981.  *See id*. at 3-4.

### III.   LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to file a "motion to alter or amend a judgment."  FED. R. CIV. P. 59(e).  Such a motion is, in effect, a motion for reconsideration.  "Motions for reconsideration under Federal Rule of Civil Procedure 59(e) serve primarily to correct manifest errors of law or fact in a prior decision of the court."  *York Int'l*

---

²     In their memorandum in support of the motion for reconsideration, Plaintiffs point specifically to paragraphs 26, 30, 39, 47, 50, 65-67, 69-73, 75-77, 82, and 183-84 of the Amended Complaint.  *See* Pls.' Mem. at 7-11.  The relevant allegations contained in these paragraphs can be distilled to the two contentions identified here.  Other allegations contained in these paragraphs—for example, pertaining to use of force—have no plausible connection to race as a factor in the alleged treatment of the African American teenagers.  The Court examines the allegations as presented in the Amended Complaint in detail further below.

*Corp. v. Liberty Mut. Ins. Co.*, 140 F. Supp. 3d 357, 360 (M.D. Pa. 2015) (citing *United States v. Fiorelli,* 337 F.3d 282, 288 (3d Cir. 2003)). As such, "a proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013).

"Reconsideration of a judgment is an extraordinary remedy, and courts should grant such motions sparingly." *York Int'l Corp.*, 140 F. Supp. 3d at 361 (citing *D'Angio v. Borough of Nescopeck,* 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999)); *see Lesende v. Borrero*, 752 F.3d 324, 339 (3d Cir. 2014) ("[C]ourts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." (quoting *In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009))). "Said differently, a motion for reconsideration may not be used to give a litigant a 'second bite at the apple,' and therefore should not be 'grounded on a request that a court rethink a decision already made.'" *Jarzyna v. Home Properties, L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016) (quoting *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1231 (3d Cir. 1995) and *In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 637, 639 (E.D. Pa. 2010)), *aff'd*, 783 F. App'x 223 (3d Cir. 2019).

IV. **DISCUSSION**

As an initial matter, Plaintiffs are correct that 42 U.S.C. § 1981 protects rights beyond simply the right to contract, engage in litigation, and give evidence. Section 1981(a) provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject

> to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Pursuant to the plain language of the statute, the Third Circuit has recognized that the right of all persons "to the full and equal benefit" of all laws as is enjoyed by white citizens, and to "like punishment, pains, [and] penalties," protects against racially motivated deprivations of equal protection of the laws generally.³ *See Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir. 1977). While "[t]he Third Circuit has suggested that improper behavior of police officers, such as false arrests and false testimony, can deprive persons of 'equal benefit' of the law and of 'like punishment,'" *Crane v. Cumberland Cty., Pa.*, No. CIV.A. 1:CV-99-1798, 2000 WL 34567277, at *11 (M.D. Pa. June 16, 2000) (citing *Mahone*, 564 F.2d at 1027-28), *aff'd sub nom. Crane v. Cumberland Cty., Pa*, 64 F. App'x 838 (3d Cir. 2003), racial animus has to be a motivating factor behind the alleged discrimination, *see Grier by Grier v. Galinac*, 740 F. Supp. 338, 342 (M.D. Pa. 1990). Indeed, as the Supreme Court recently clarified, "a plaintiff must initially plead . . . that, *but for* race, [he] would not have suffered the loss of a legally protected right"—in Plaintiffs' case, the full and equal benefit of the law as is enjoyed by white citizens. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (emphasis added). Crucially, in pleading such a claim, "conclusory allegations of generalized racial bias . . . are insufficient" to meet a plaintiff's burden. *Rose v. Baehr*, No. 19-CV-0346, 2019 WL 498522, at

---

³   As the Court observed in its January 12 Opinion, "to state a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." *Brown v. Philip Morris Inc*., 250 F.3d 789, 797 (3d Cir. 2001) (internal quotation marks omitted). For purposes of pleading the second element of a § 1981 claim, "activities enumerated in § 1981" include the right to "the full and equal benefit of all laws" and the right to be "subject to like punishment, pains, [and] penalties" as white citizens. *White v. Wireman*, No. 1-16-CV-675, 2018 WL 10456721, at *6 n.5 (M.D. Pa. Oct. 15, 2018), *report and recommendation adopted*, No. CV 1:16-0675, 2020 WL 869863 (M.D. Pa. Feb. 21, 2020).

*3 (E.D. Pa. Feb. 8, 2019); see Conway v. City of Philadelphia, No. CIV. A. 96-8112, 1997 WL 129024, at *3 (E.D. Pa. Mar. 20, 1997).

Additionally, only state actors can be held liable for claims brought under § 1981's full and equal benefit and like punishment clauses. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001) ("[O]nly state actors can be sued under the 'full and equal benefit' clause of § 1981."); *Crane*, 2000 WL 34567277, at *11 (explaining that because "Defendants are not government actors with the ability to deprive him of the equal benefit of the law or to inflict disparate punishment, Plaintiff cannot maintain a 1981 action against them"). It is not disputed that the Defendants, as police officers, are government actors against whom liability may lie for a § 1981 "full and equal benefit" and "like punishment" claim. *See Mahone*, 564 F.2d at 1028.

The operative question then for purposes of the instant motion is whether the Court made a clear error of law in not finding that Plaintiffs stated viable § 1981 claims under the "full and equal benefit" and "like punishment" clauses. As explained below, the Court concludes that it did not.

"To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) . . . . [t]he complaint must set forth enough factual allegations to 'state a claim to relief that is plausible on its face.'" *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe*, 961 F.3d at 208 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs are unable to satisfy this standard with respect to their § 1981 claims: as explained below, the Amended Complaint fails to plausibly allege that the harm suffered by Mekhi Burkett and Jawuane Johnson at the hands of

the several Whitehall Township police officers would not have occurred *but for* Burkett and Johnson's race.

As noted previously, Plaintiffs point to the following allegations in the Amended Complaint to support their § 1981 claims (the allegations that have any plausible connection to race are bolded):

> 26.[4]   **Plaintiffs Burkett and Johnson are African American minor children.**
> **. . .**
>
> * * *
>
> 30.   **Defendant Stephens. . . is Caucasian. . . .**
>
> * * *
>
> 39.   **Defendants Cuth, Reed and Dugan. . . are also Caucasian. . . .**
>
> * * *
>
> 47.   **Defendant Apgar. . . is also Caucasian. . . .**
>
> * * *
>
> 50.   At the same time as the vicious K-9 was attacking the children, either Defendant Cuth, Reed, Dugan or Stephens, reached out and shoved [Plaintiff] Burkett, with such force that he was caused to fall down several rows of bleachers, and become injured.
>
> * * *
>
> 65.   Suddenly and without warning, Defendants Reed and/or Slivka and/or Stephens and/or Dugan and/or Cuth and/or Apgar and/or Reszek. . . grabbed Plaintiff Johnson and drug him several feet out into the hallway.
>
> 66.   By this point, Plaintiff Johnson was literally surrounded by police officers, in a relatively confined space, was not resisting arrest, and had no possibility of escape.

---

[4]   These numbers denote paragraphs in the Amended Complaint.

67     Nevertheless, Defendants Reed and/or Slivka and/or Stephens and/or Dugan and/or Cuth and/or Apgar and/or Reszek executed an unreasonable use of force by slamming Plaintiff Johnson's head into a wall with such force that he suffered a concussion, among other injuries, and then tackled him to the ground where he again hit his head.

\* \* \*

69.    The 5'4", 110 pound [Plaintiff] Burkett was then put in a chokehold by Reed and/or Slivka and/or Stephens and/or Dugan and/or Cuth and/or Apgar and/or Reszek, who also pinned his arm behind his back, while the other Defendant Officers tackled him to the ground causing Plaintiff Burkett to violently strike his head.

70.    Defendant Reed and/or Slivka and/or Stephens and/or Dugan and/or Cuth and/or Apgar and/or Reszek continued to choke Plaintiff Burkett while he was on the ground, despite Plaintiff Burkett stating that he "couldn't breathe" and that the officer was going to "break my arm".

71.    Plaintiff Burkett was, at this point, physically unable to resist arrest due to the blow to the head he suffered, his arm being pinned behind his back and an officer maintaining a chokehold on him.

72.    Indeed, videotaped evidence of Plaintiff Burkett being tackled to the ground clearly shows that Defendants Reed and/or Slivka and/or Stephens and/or Dugan and/or Cuth and/or Apgar and/or Reszek had successfully restrained Plaintiff Burkett, that he was lying on the ground with his arms restrained, in a chokehold and three police officers on top of him, and that he was not resisting arrest and had no possibility of escape.

73.    Nevertheless, videotaped evidence also reveals that Defendants Reed and/or Slivka and/or Stephens and/or Dugan and/or Cuth and/or Apgar and/or Reszek executed an unreasonable use of force by lifting Plaintiff Burkett off the ground and slamming his head into the floor with such force that Plaintiff Burkett suffered a concussion, among other injuries. . . .

\* \* \*

75.    **Plaintiffs Burkett and Johnson were then taken into custody and brought to the Whitehall Township Police Department, along with two other black students.**

76.    **Notably, despite there being several non-African Americans among the group of children that the officers referred to as an "angry mob", only the black teens were arrested and charged with crimes.**

> 77.   Neither Plaintiff received any medical care while in custody.
>
> * * *
>
> 82.   The following day, Defendant Officers engaged in a scheme, plan and design to assist in covering up their and their fellow Defendant Officers outrageous conduct by, inter alia, filing false police reports, lying about the incident, and maliciously prosecuting Plaintiffs on false and fabricated charges.
>
> * * *
>
> 183.   42 U.S.C. § 1981 confers on all persons the right to "the full and equal benefit of all laws and proceedings for the security of persons and property..."42 U.S.C. §1981(a).
>
> 184.   Section 1981 provides extensive equal protection rights, but is properly brought pursuant to Section 1983, which provides the remedy for violations of Section 1981 by state actors.

Pls.' Mem. at 7-11.

A review of these allegations makes clear that Plaintiffs have failed to plausibly allege a connection between the harm Plaintiffs suffered at the hands of the Defendant police officers and Plaintiffs' race.[5] Indeed, the only allegations pertaining in any way to race are that (1) Burkett and Johnson are African American, (2) the Defendant police officers are white, (3) there were several non-African Americans among the group of teenagers at the basketball game; and (4) the teenagers who were arrested are African American. In the Court's view, these allegations are insufficient to plausibly suggest that Burkett and Johnson suffered mistreatment at the hands of the Defendants *because* of their race or Defendants' racial animus. That is, Plaintiffs' allegations fail to plausibly suggest that Burkett and Johnson would not have suffered the harm they did *but*

---

[5] By contrast, Plaintiffs' allegations are clearly sufficient to state viable Fourth Amendment excessive force claims. Defendants did not seek dismissal of these claims as contained in Counts One and Ten of the Amended Complaint.

*for* the fact that they are African American.⁶ *Comcast Corp.*, 140 S. Ct. at 1019. *See Doss v. Osty*, No. CIV. 10-3497, 2011 WL 2559558, at *4 (D.N.J. June 27, 2011) ("Plaintiff makes no specific allegations of racial bias, other than that Plaintiff is black and Defendant [ ] is white, and that the area where the shooting took place is predominantly black. Plaintiff has not alleged any facts that could support a claim of racially discriminatory animus.").

This conclusion is supported by recent decisions in which courts have addressed challenges to § 1981 claims on the grounds of but-for causation. *See Williams v. Tech Mahindra (Americas), Inc.*, No. 3:20-CV-04684, 2021 WL 302929, at *7 (D.N.J. Jan. 29, 2021) ("[T]he Court does not find the Complaint contains sufficient factual matter to state a [§ 1981] claim that is plausible on its face under the but-for causation standard. . . . Plaintiff fails to provide non-conclusory allegations that plausibly suggest his race, national origin, or a relevant protected activity, was a 'but-for' cause of his termination or lack of promotion. Plaintiff can point to no racially discriminatory statements or conduct by TMA, his supervisors, or anyone conceivably involved in the decision to fire him or refuse to promote him.");⁷ *cf. Phillips v. Cty. of Essex Dep't of Citizen Servs.*, No. CV 16-05807, 2020 WL 5810558, at *3 (D.N.J. Sept. 30, 2020) (finding, on summary judgment, that where plaintiff provided no evidence that his denial of

---

⁶ Nor do Plaintiffs' references to alleged inconsistencies between the affidavit of probable cause and the teenagers' accounts of events provide the necessary support—in particular, they do not make the necessary connection between the treatment of Burkett and Johnson and their race. *See* Amended Complaint, ECF No. 6, ¶¶ 4, 31, 82-84. These allegations are discussed in further detail in the context of Plaintiffs' proposed Second Amended Complaint.

⁷ *See also Valentin v. Esperanza Hous. Counseling*, 834 F. App'x 745, 746 (3d Cir. 2021) (finding that where plaintiff alleged "that unlawful phenotypical bias was one of the factors" leading to a falling out between plaintiff and a housing services provider, and where plaintiff "alleged that [the provider's] employees referred to him using a racial epithet, criticized his lack of Spanish literacy, and made 'comments such as . . . don't you want to help out your own race,'" "the District Court properly dismissed [plaintiff's] § 1981 claim because, among its deficiencies, the Complaint lacked allegations plausibly demonstrating that race was a but-for cause of the [plaintiff-provider] relationship's end").

government benefits was due to his race, his claim under 42 U.S.C. § 1981 failed because he "provided no evidence of race-based discrimination"). *Compare Bakkali v. Walmart, Inc.*, No. 20-CV-3440, 2020 WL 5517350, at *4 (E.D. Pa. Sept. 14, 2020) (finding plaintiff, who was of Middle Eastern descent and a Muslim, had pleaded a viable § 1981 claim where he alleged that while shopping at Walmart, an employee approached him "unsolicited and told him that 'Jesus Christ is the only savior,' 'any other believers are wrong,' and that 'Allah is teaching you tough things to go around the world to do,'" after which he was followed around the store by several store employees).[8]

The Court further notes that even if Plaintiffs were able to state claims under § 1981's full and equal benefit and like punishment clauses against the individual officers, Plaintiffs would be unable to state such claims against either Whitehall Township or Whitehall-Coplay School District. Title 42 U.S.C. § 1983 is the exclusive mechanism for raising a claim under § 1981 against state entities, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989), and the requirements for pleading claims of municipal liability by way of § 1983 apply as they ordinarily would: A plaintiff attempting to plead such a claim must allege that the harm suffered was the direct result of a municipal policy, practice, or custom. *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 666 (E.D. Pa. 2020) ("A school district may only be held liable under § 1983 for violating rights under § 1981 if the violation was the result of municipal custom, policy, or practice."); *see McGovern v. City of Philadelphia*, 554 F.3d 114, 120-21 (3d Cir. 2009) ("Even if we were to recognize a cause of action under § 1981, McGovern's claim against the City was

---

[8]   *Compare also Scott v. Rieht*, 690 F. Supp. 368, 371 (E.D. Pa. 1988) (finding that a black arrestee stated a plausible § 1981 claim against an arresting officer through allegations supporting discriminatory intent, including that derogatory and insulting comments were made by the arresting officer).

appropriately dismissed for an independent reason: he did not allege that the discrimination he suffered was pursuant to an official policy or custom of the City."). As the Court determined in its January 12, 2021 Opinion, whether based on the existence of an affirmative policy or custom, or on a failure to train theory, Plaintiffs fail to plausibly allege that the harm suffered by Burkett and Johnson was the direct result of a Whitehall Township (or Whitehall-Coplay School District) policy, practice, or custom.

Accordingly, the Court concludes that it did not commit a clear error of law in not finding that the Amended Complaint stated viable § 1981 claims under the statute's equal benefit and like punishment clauses.

Finally, the Court must determine whether it erred when it found that permitting Plaintiffs leave to amend their pleadings an additional time to re-assert § 1981 claims would be futile. The Court finds that it did not. This conclusion is buttressed by a review of Plaintiffs' proposed Second Amended Complaint, which has been filed along with Plaintiffs' motion for reconsideration and which re-asserts § 1981 claims.

The proposed Second Amended Complaint differs from the Amended Complaint in that it elaborates on allegations that (1) the "crowd" of teenagers at the basketball game, of which Burkett and Johnson were a part, included black, white, and Latino students, all of whom (according to the affidavit of probable cause) were told that they were under arrest, while in the end only African American teenagers were arrested; (2) certain representations contained in the affidavit of probable cause are disputed by Burkett and Johnson and are in fact false; and (3) Defendant Stephens made several racist posts on social media. *See* ECF No. 27-2. However, even with these elaborations and additions, the proposed Second Amended Complaint does not, in the Court's view, modify Plaintiffs' proposed § 1981 claims from possible to plausible.

With regard to the proposed Second Amended Complaint's first elaboration—that despite the fact that the "crowd" of teenagers at the basketball game included white, black, and Latino students, and despite the fact that the affidavit of probable cause stated that officers informed the "crowd" that they were all under arrest, the only teenagers who were arrested are black—assuming these averments to be true, they do not add anything beyond what the Amended Complaint initially alleged.  This set of allegations remains incapable of plausibly suggesting that racial animus was a but-for cause of Johnson and Burkett's alleged mistreatment.

With regard to the second elaboration in the proposed Second Amended Complaint—concerning the alleged falsehoods contained in the affidavit of probable cause—these allegations similarly do not make the requisite connection to the existence of racial animus on the part of Defendants.  Indeed, the alleged false statements in the affidavit, and Plaintiffs' characterization of them, are devoid of *any* connection to or mention of race.

Lastly, with regard to the third elaboration in the proposed Second Amended Complaint—concerning the allegations regarding Defendant Stephens's social media posts—these allegations do not plausibly suggest the existence of racial animus, let alone (i) a specific anti-African American racial animus, (ii) which was directed at Burkett and Johnson the night of the incident.  The four social media posts to which Plaintiffs point, which were made after the night of the incident in question, neither overtly nor implicitly reference race.[9]  To reverse engineer the existence of anti-African American racial animus on the part of Defendant Stephens from these posts, then impute the same racial animus to the other Defendants, and, finally, to

---

[9]   One of these posts concerns someone Defendant Stephens knows having received an apparent "scam" IRS phone call; two of the posts concern basketball player Lebron James "walking out" or boycotting the NBA season; and one post concerns the propriety of mail-in voting.  There is no mention of race or ethnicity in any of these posts.

contend that such animus was a but-for cause of Burkett and Johnson's alleged mistreatment the night of the incident, is simply too attenuated a line of reasoning to satisfy the applicable plausibility standard.[10]

For the several reasons discussed above, the Court concludes that it erred neither in determining that allowing Plaintiffs leave to re-plead their § 1981 claims would be futile, nor in declining to grant leave to amend on this basis.

V.    CONCLUSION

"[C]ourts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Lesende v. Borrero*, 752 F.3d 324, 339 (3d Cir. 2014). For all of the foregoing reasons, Plaintiffs have failed to persuade the Court that its previous ruling as to the viability of their § 1981 claims was clearly erroneous or will result in a manifest injustice. As a consequence, Plaintiffs' motion for reconsideration is denied. Plaintiffs shall, however, still be

---

[10]    Plaintiffs' arguments are additionally problematic in the inconsistency of their logic. Plaintiffs allege that many portions of the affidavit of probable cause are factually false, and this they claim is evidence of racial animus. However, assuming this allegation to be true, it necessarily undercuts the credibility of the *entire* affidavit—including those portions that Plaintiffs allege (or assume) to be truthful, *i.e.*, those concerning the "crowd" of teenagers in the stands. Specifically, Plaintiffs claim that because, per the affidavit, the police perceived the entire "crowd" of teenagers as being unruly, and informed the entire "crowd" that they were all under arrest, that only African American teenagers were arrested is evidence of racial animus. It is difficult to reconcile Plaintiffs' two conflicting arguments regarding what the affidavit of probable cause says about the existence of racial animus:  that certain portions of the affidavit are false (*i.e.*, that the African American teenagers "pushed" officers, directed profanities at them, etc.), and in being false these portions of the affidavit support a finding of racial animus; and that certain portions of the affidavit are accurate (*i.e.*, those portions indicating that entire crowd of teenagers was being unruly and all the teenagers were informed they were under arrest), and in being accurate these portions also support a finding of racial animus.

permitted to file a Second Amended Complaint pursuant to the directives set forth in the Court's January 12, 2021 Opinion and Order.

    An appropriate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
